DECISION AND ORDER
This case is before the Court for decision with respect to a number of Motions made at appropriate times during the course of an eight week trial that resulted in a "hung jury" so-called. Decision by the Court on each of the Motions which were brought pursuant to R.C.P. Rule 50 was deferred after argument pending final action by the jury.
Following the failure of the jury to return a verdict on the single issue put to it, the Court invited and thereafter received extensive written memoranda as to the two Rule 50 Motions brought by Defendants and also with respect to the single Plaintiff's Motion seeking judgment as a matter of law. Oral arguments were encouraged by the Court and were heard by it during an all day session on January 21, 2003. Additional submissions were received by the Court shortly thereafter. The foregoing essentially sets the background for this decision and the Court now turns to the fundamental assertions of the moving parties; however, the Court first will note that shortly before the selection of the jury in connection with the Phase One trial limited to the question:
 "Does the presence of lead pigment in paint and in coatings in homes, schools, hospitals, and other public and private buildings throughout the State of Rhode Island constitute a public nuisance?"
Defendants jointly or in some instances singularly filed five separate Motions pursuant to the provisions of R.C.P. Rule 56 seeking summary judgment and Defendant Sherwin- Williams Company filed a Motion for Clarification and Definition of Trial Phases Consistent with Due Process Guarantees of the United States and Rhode Island Constitutions. Each of those Motions were dealt with and denied in Bench Decisions rendered on or about August 14 and August 15, 2002.
The Court notes that in addition to the three Rule 50 Motions referenced above (two by Defendants, one by Plaintiff), Defendants jointly by Motion dated December 6, 2002, moved to renew their summary judgment motions and Motion for Clarification and Definition of Trial Phases Consistent with Due Process Guarantees of the United States and Rhode Island Constitutions, as aforesaid, as a Motion for Judgment as Matter of Law (a Rule 50 motion) (hereinafter referred to for convenience as Defendants' "Omnibus Motion"). No additional memoranda or argument was filed or made with respect to the Omnibus Motion.
Each of the four Motions will be discussed seriatim. It is, of course, appropriate at this point for the Court to indicate that each of the Motions seek judgment for the moving party(ies) as a matter of law. In dealing with such motions ". . . the trial justice, (must) examine:
 "the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination." See Peter Filippi et al v. Marion Filippi et al v. Peter Filippi et al. v. Citizens Trust Company, No. 2001-130-A and No. 2001-169-A, February 18, 2003, Williams, C. J.
The Motions here to be considered and ruled upon in the order in which they were presented and in which they will hereinafter be discussed are as follows:
A) Defendants' Motion for Judgment as a Matter of Law Based on the Irreconcilable Conflict between the Legislatively Mandated Standard for Acceptable Levels of Intact Lead Paint and the "No Presence" Standard Proposed by the Attorney General's Proof at Trial (hereinafter referred to for convenience as the "Dichotomy Motion").
B) Plaintiff's Motion for Judgment as a Matter of Law (hereinafter referred to for convenience as "Plaintiff's Motion").
C) Defendants' Motion for Judgment as a Matter of Law on the Ground that the State Filed to Offer Competent Evidence of the Scope of the Actual or Threatened Harm Alleged to Constitute a Public Nuisance (hereinafter referred to for convenience as "The Fingerstick-Venous Motion").
D) Defendants' Omnibus Motion.
 THE DICHOTOMY MOTION
Through this Motion, Defendants maintain that a substantial conflict exists between the provisions of the Lead Poisoning Prevention Act (LPPA) and the common law of public nuisance which forms the basis for Plaintiff's claim. Defendants tell us that all of the testimony adduced by Plaintiff was to the effect that the mere presence of any lead pigment in paint or coatings in homes, etc. constituted a public nuisance. This fact (if fact it is) Defendants suggest flies in the face of statutory and regulatory provisions that authorize the maintenance of lead in paint so long as it falls within and complies with the definition of "lead safe." Where the Legislature has determined a standard, argue Defendants, Plaintiff Attorney General is not free to litigate for a higher or, indeed, for a different standard. Put differently, but saying the same thing, Defendants urge upon the Court that the Legislature through the LPPA authorized the continued presence of lead in paint so long as the paint is lead safe and not a hazard as defined by statute and regulation. The Plaintiff would preclude the presence of lead pigment in paint (say the Defendants) by seeking in Phase One to establish that such presence constitutes a public nuisance and if the case ever reached the issue of remedies, by then seeking to require a total abatement of lead paint from such buildings. Of course, it is premature to discuss remedies. . This issue heretofore has been, in other contexts in this case, presented to and decided by this Court. Specifically, see this Court's decision of April 2, 2001 on Defendants' Rule 12(b)(6) motions and the Court's Bench Decisions of August 14 and 15, 2002 on Defendants' Rule 56 motions referred to above.
 As argued by Defendants:
 "A `yes' answer to the Phase One question would unavoidably conflict with the Legislatively mandated [RIDOH] standards by imposing a standard that any presence of lead pigment in paint without regard to condition was an unreasonable interference with public health." (See Defendants' Memorandum in Support of their Motion Etc. based on the Irreconcible Conflict Etc. dated December 6, 2002 at page 2.)
During argument to the Court, Defendants further underscored their argument by stating that if, in fact, they were conflicting standards, that is to say, the Legislative/Regulatory "Lead Safe," on the one hand, as contrasted with the Plaintiff's asserted "presence equals public nuisance," on the other, then these conflicting standards both would of necessity be applied to one set of properties (the buildings located within the State of Rhode Island). It is, inter alia, this clash of standards as applied to the same buildings that Defendants assert would constitute an irreconcilable conflict.
This Court as noted above heretofore in this case has had occasion to deal essentially with this same argument. It noted in the aforementioned April 2, 2001 decision that the interpretation and savings provision so-called of the LPPA found at § 23-24.6-25 reads:
 "the provisions of this chapter shall be liberally construed and shall be held to be in addition to, and not in substitution for or limitation of, the provisions of any other law."
This Court then believed, and believes now, that that language mandated the law be liberally interpretated so as to permit the LPPA to co-exist (consistent with its terms) with common law equity power as to public nuisances vested in the Attorney General even prior to the adoption of our State Constitution. The Court further notes that the provisions of LPPA clearly in the first instance were intended by the General Assembly to protect the health of children and that its provisions almost exclusively deal with owners of dwellings, dwelling units or premises and not in any way with manufacturers of lead pigment used in paint and coatings or, indeed, with manufacturers or vendors of paint or paint products. It, of course, is the alleged manufacturers of such pigment who, here, are the Defendants.
The Court believes that it here must digress to note that ordinarily in dealing with a motion for judgment as a matter of law the Court is required to undertake a detailed analysis of the evidence before it to determine the sufficiency of evidence (not the weight or credibility thereof) and reasonable inferences drawn therefrom so as to support the position of the nonmoving party. The Court here notes that it has not undertaken such an analysis within the four corners of this Decision.
The trial herein consumed approximately seven weeks. There were many witnesses presented by Plaintiff; far fewer witnesses by Defendants. Almost without exception, all of the witnesses offered so-called expert testimony. Pretrial, the Court had cautioned all counsel that because of its bifurcation order it was concerned that in fact the parties might be trying in Phase One different cases. This Court believes that that is exactly what happened. The Plaintiff presented evidence from which a jury could have found that the presence of lead pigment in paint and coatings constitutes a public nuisance consistent with the various factors that the Court charged the jury in the instructions which it gave. Defendants, through their witnesses, presented sufficient evidence which, if believed, would have justified the jury in finding that the Plaintiff had not satisfied its burden of establishing that the presence of lead pigment constituted a public nuisance because, inter alia, any threatened harm stems not from the presence of lead pigment in paint and coatings, but rather from poorly maintained and/or deteriorated non-intact lead paint. Of course, Plaintiff on this issue had the burden of proof and in the view of this Court presented sufficient evidence to withstand the Dichotomy Motion which hereby is denied.
 PLAINTIFF'S MOTION
Plaintiff, having the burden of proof with respect to the sole issue which was tried in Phase One, introduces its memorandum in support of its Motion with the bold assertion that:
 "The Court is here presented with a remarkable opportunity and responsibility. As a matter of law the State established at trial that lead pigment in paint and coatings throughout Rhode Island buildings causes and threatens sufficient harm, particularly to young children to meet any reasonable standard of public nuisance."
During argument, this Court inquired as to whether, under our rules, judgment pursuant to Rule 50 was appropriately granted to a party bearing the burden of proof. Separately the parties supplemented their previous memorandum with letter memos addressing that issue. Plaintiff supplied the Court with a number of appellate court opinions which seem, under at least certain circumstances, to permit the grant of a directed verdict or a Rule 50 motion to a party who has the burden of proof. Notably absent however, and based on the description by our Supreme Court of the role of the trial justice in dealing with a Rule 50 motion, see Filippe, absent for good reason, are any cases where taking the evidence in the light most favorable to a nonmoving party (as to this motion — the Defendants), there remain factual issues upon which reasonable jurors might draw different conclusions. Under such circumstances the matter properly should be submitted to the jury and a Rule 50 motion should be denied.
 In its instructions to the jury, this Court had occasion to state:
 " . . . that a public nuisance exists where there is an unreasonable interference with the health, safety, peace, comfort, or convenience of the general community. An interference is unreasonable when persons have suffered harm or are threatened with injuries that they ought not have to bear."
There can be no dispute but that the question of reasonableness is a question of fact to be established by the party bearing the burden of proof, here the Plaintiff. "Reasonableness is a question of fact. Noise must be unreasonable to raise to the level of a [private] nuisance, and reasonableness is a question of fact." Gimmicks, Inc. v. Dettore,612 A.2d 655, 659 (R.I. 1992) (citing DeNucci v. Pezza, 114 R.I. 123, 129 (1994)).
Accordingly, because it would be an usurpation by the Court of a function of the jury (fact finding), this Court holds that under the circumstances at bar it must, and hereby does, deny Plaintiff's Motion for Judgment as a Matter of Law. Further to this point, in the preceding section of this Decision, the Court briefly stated the reasons why it had not undertaken in this Decision a lengthy analysis of the evidence before it. That discussion is found at pages 5 and 6 of this Decision and also is incorporated in this discussion of the Plaintiff's Motion.
Essentially, what the Court holds today is that even if Plaintiff clearly is correct that there is an unreasonable interference with the health, safety, comfort, or convenience of the general community, it is for the jury to determine, as a matter of fact based upon the evidence presented and the jury's view as to the weight and credibility thereof, if it is the presence of lead pigment in paint and coatings that constitutes such unreasonable interference or, for example, if such interference only is a function of the deteriorated condition of such lead paint.
 THE FINGERSTICK — VENOUS MOTION
The rules and regulations promulgated by the Department of Health and the CDC, as well as the provisions of the LPPA, essentially define a lead poisoned child as one with a confirmed venous reading of ten or greater. Using statistics generated by RIDOH, Plaintiff emphasized again and again in its opening, in its closing as well as in the direct examination and cross examination of almost every witness who testified that some 35,000 Rhode Island children suffer from lead poisoning.
The thrust of the Fingerstick-Venous Motion is that the figure of 35,000 children was derived from tables, (Exhibit 5 and Exhibit 10), which showed the highest reading obtained from the roughly 170,000 Rhode Island children who over the years in question were screened, that is to say tested. Defendants emphasize that those tables clearly establish that the results therein reported demonstrate the highest readings obtained from the children whether the test was taken by the fingerstick method, that is to say the so-called capillary test or, was a test of blood drawn from the child's vein, the so-call venous test. There is, of course, no question but that the tables do indicate that the highest reading, however obtained, fingerstick or venous, was utilized in assembling the information reprinted in the table. Defendants' argument thus is that because the statute and the regulations define blood poisoning by reference to only confirmed venous readings that Plaintiff has failed to offer competent evidence on this issue and that the number of 35,000 children is illusory. Accordingly, Defendants claim Plaintiff has failed to offer evidence to establish a prima facie case and Defendants' Rule 50 motion on this issue should prevail.
Plaintiff responds that at all pertinent times during this litigation the basis of the statistical information on which it relied was known to — not hidden from — Defendants and, indeed, the mechanics of the data base maintained by RIDOH were fully explained to Defendants.
Defendants seek to deflect that response by asserting ". . . so what." They urge upon the Court that the evidence and figures relied upon by the Plaintiff on their face are not competent and are inconsistent with the statutory and regulatory definitition of lead poisoning and thus Plaintiff failed to present evidence that could form the basis for a jury determination favorable to Plaintiff, i.e., Plaintiff failed to make out a prima facie case.
The Court starts its review of the arguments advanced by the parties on this issue by reviewing the record to determine whether a reasonable jury, upon the evidence adduced, could find that there was a public nuisance as a result of the presence of lead pigment in paints and coatings . . . in Rhode Island. In the face of the statute and definitions in the regulations, could the jury determine the existence of a public nuisance as a fact absent competent evidence of the number of children afflicted by lead poisoning and in this context does lead poisoning for the purpose of this question, of necessity have the same meaning as it does in the statute and the regulations?
The Plaintiff, in defending against the Fingerstick-Venous Motion differentiates between an element of their public nuisance claim andevidence that goes to support a finding of that element. (Emphasis added.) Plaintiff properly asserts that as part of its prima facie case it was required to produce evidence with respect to the essential element of its claim. As a matter of fact, the Court in instructing the jury stated:
 "An essential element of a public nuisance claim is that persons have suffered harm or are threatened with injuries that they ought not have to bear."
Plaintiff argues that in addition to the evidence (or as Defendants claim, the failure of evidence) with respect to the number of children afflicted, it presented sufficient evidence so as to get beyond a Rule 50 motion. That evidence was with respect to the number of homes in Rhode Island in need of abatement, it was with respect to the nature of the harm and as to the prevalence of lead paint in Rhode Island homes, buildings, etc., it was with respect to the nature of enhanced maintenance necessary to neutralize the risks of future harm, and it was with respect to the potential for future harm to children from exposure to lead paint and coatings, that is to say, to the lead pigment which is contained in such paint and coatings. This Court believes and this Court holds that there was sufficient evidence exclusive of the evidence with respect to the number of children who had been afflicted with lead poisoning for the jury to have found, if it believed in the credibility of such evidence) that Plaintiff had proven this essential element of its claim.
With respect to Defendants' powerful argument that Plaintiff failed to offer competent evidence of numbers, the Court notes there was no legal requirement of a demonstrated, proven threshold number. Nor does this Court find that Plaintiff, in this common law claim, is required to adopt the statutory and regulatory definition of lead poisoning or of elevated blood levels. Failure to establish the statutory mandated level of 10 and all of the evidence as to the reliability of capillary vs. venous test results certainly may be used by the jury to evaluate the weight and credibility of Plaintiff's evidence but Plaintiff was not trying to establish anything pursuant to the statute rather Plaintiff sought to establish the existence of a public nuisance — that persons have suffered harm or are threatened with injuries that they ought not have to bear. The harm for this purpose as defined by our cases may be actual present harm or, harm that likely would occur in the future which the public ought not have to bear resulting from a condition which presently exists.
As stated above, this Court holds that sufficient evidence was put before the jury on all of the essential elements (either with or without the specific 35,000 children number) for it to hold as it now holds that Plaintiff made out a prima facie case on which the jury could have answered the sole question presented in the affirmative and thus the Fingerstick-Venous Motion must be and hereby is denied.
 DEFENDANTS' OMNIBUS MOTION
Defendants' Omnibus Motion is predicated on and incorporated a series of pre-trial motions which were heard and ruled on by this Court in mid-August 2002. Defendants collected these motions and incorporated them together with the memo submitted in support thereof as a single Rule 50 motion. No further argument for or against this Omnibus Motion was heard. No further memorandum for or against the Omnibus Motion was received by the Court.
Accordingly, for the reasons previously set forth in August 2002, Defendants' Omnibus Motion be and the same is hereby denied.
ORDER
Predicated on the foregoing Decision and the reasons therein set forth, it hereby is ORDERED as follows:
1. The Dichotomy Motion be and it hereby is denied;
2. Plaintiff's Motion be and it hereby is denied;
3. The Fingerstick-Venous Motion be and it hereby is denied; and,
4. Defendants' Omnibus Motion be and it hereby is denied.
ENTERED as the Decision and Order of this Court this _____ day of March, 2003.
BY ORDER ENTER: _________________________________ __________________________ Michael A. Silverstein Deputy Clerk Associate Justice